**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2009
Decided June 12, 2009

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-4185

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 05 CR 858-1 |
| JAVIER SERRANO-RANGEL, | |
| *Defendant-Appellant.* | William J. Hibbler, *Judge.* |

## O R D E R

When he pleaded guilty to one count of conspiracy to sell cocaine, Javier Serrano-Rangel admitted that the quantity involved was 426 kilograms. The district judge computed the range under the Sentencing Guidelines that corresponds to this amount and imposed a guidelines sentence of 188 months in prison, the bottom of the range. Serrano-Rangel appeals, arguing that the court erred in several respects: first, by refusing to give him a sentencing discount for playing only a minor role in the conspiracy; second, by treating the guidelines as presumptively reasonable; and finally, by imposing an unreasonable sentence. Finding no merit in any of these points, we affirm the district court's judgment.

## I

Serrano-Rangel admitted in his plea agreement that he helped Jesus Trinidad Caro and Francisco Ruvalcaba transport and unload cocaine from a semi-trailer. Serrano-Rangel first drove to a gas station where he met Caro and Ruvalcaba, who were in the semi-trailer. Ruvalcaba got out of the trailer and into Serrano-Rangel's car, at which point the two drove to Serrano-Rangel's auto shop. There they rejoined Caro, who had driven the semi-trailer to the shop. Serrano-Rangel, who knew that the semi-trailer contained cocaine, provided cardboard boxes and plastic wrap to package the cocaine and instructed three mechanics to help unload the trailer. Serrano-Rangel also gave a cell phone to one of the mechanics, so that the crew could keep in touch with him while they repacked the cocaine and loaded it into a pickup truck he had provided. After two hours, Ruvalcaba contacted Serrano-Rangel, who returned and drove the truck into an adjacent lot. In the lot, federal agents arrested Caro, Ruvalcaba, and Serrano-Rangel. The agents found eight sealed cardboard boxes containing a total of 426 kilograms of cocaine in his truck.

Serrano-Rangel pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine. 21 U.S.C. §§ 841(a)(1), 846. In a presentence investigation report, a probation officer calculated his guidelines range to be 188 to 235 months, based on a total offense level of 35 and a criminal history category of II. This reflected a base offense level of 38, see U.S.S.G. § 2D1.1, from which three levels were subtracted for acceptance of responsibility, see U.S.S.G. § 3E1.1(a) and (b). The probation officer concluded that Serrano-Rangel was not eligible for a further reduction for playing only a minor role in the offense, see U.S.S.G. §§ 3B1.1 and 3B1.2, in light of the active role he played in the storage and repackaging of the drugs. Based on an earlier conviction for domestic battery and the fact that he committed the current offense while he was on conditional discharge for the former offense, the probation officer placed him in Criminal History Category II.

At sentencing the district court rejected Serrano-Rangel's argument that he should receive a reduction in his offense level for being a minor participant in the conspiracy. See U.S.S.G. § 3B1.2(b). The judge reasoned that Serrano-Rangel performed an important role in the conspiracy by storing the narcotics, and while it "may not be the most significant role," it was not a minor one.

The court also rejected Serrano-Rangel's arguments for imposing the 120-month statutory minimum. Serrano-Rangel urged that the statutory minimum was appropriate because the crime was motivated by his need to pay for medical costs associated with his untreated diabetes, but the judge was unmoved, noting that Serrano-Rangel could have asked for support from his family to cover these costs. Serrano-Rangel also argued that his sentence should be reduced because he had been represented poorly by his lawyer in his state domestic-

battery case and thus his criminal history had been overstated. The court rejected this argument as well, pointing out that its role was not to reconsider the battery case, and what was relevant was Serrano-Rangel's conviction for that crime and his conspiracy to sell drugs shortly afterwards. Finally, the court, referring specifically to 18 U.S.C. § 3553(a), concluded that there were no grounds for imposing a sentence below the guideline range. With all this in mind, it chose a sentence of 188 months, the bottom of the range.

## II

On appeal Serrano-Ragel first argues that the district court erred in denying him a minor-role reduction. We review this determination deferentially, because "the district court is in the best position to evaluate a particular defendant's role in a criminal scheme."*United States v. Panaigua-Verdugo*, 537 F.3d 722, 724 (7th Cir. 2008). This court will reverse a district court only if its finding is clearly erroneous. *United States v. Mendoza*, 457 F.3d 726, 729 (7th Cir. 2006).

Here, the district judge did not clearly err when he denied Serrano-Rangel a minor-role reduction. A minor-role reduction applies to a defendant who is less culpable than "most other members" of a conspiracy, but whose role could not be described as "minimal." U.S.S.G. § 3B1.2, Application Note 3(A) & (5). As the judge pointed out, Serrano-Rangel filled a critical role: the drugs needed to be stored somewhere while they awaited final distribution. Serrano-Rangel maintains nonetheless that his role was less culpable than Caro and Ruvalcaba or the other "unidentified and unindicted participants in the conspiracy." As he sees it, he merely unloaded and stored drugs, without having any idea about how the drugs got there or who the distributors were. He argues that his role should be distinguished from that of those who "mastermind" the transportation of drugs from one location to another or plan the local distribution of the drugs. The record, however, is bereft of any information regarding any co-conspirators except Ruvalcaba and Caro. More importantly, for purposes of the "minor participant" adjustment, Serrano-Rangel's role must be compared with that of the average member of the conspiracy, not its putative leaders. *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007). Serrano-Rangel offers no reason beyond his bare assertion why his role was less significant than Caro's and Ruvalcaba's.

Serrano-Rangel next tries to persuade us that the district judge made the mistake of presuming that a guidelines sentence would be reasonable. If that is what the court did, then it would indeed be an error; such a presumption is permissible only on appellate review. See *Rita v. United States*, 127 S.Ct. 2456, 2466 (2007). In a related argument, Serrano-Rangel accuses the judge of placing undue weight on the guidelines range in determining the sentence. A look at the complete sentencing transcript, however, shows without a doubt that the district court committed neither such error. To the contrary, it reveals that the judge appreciated the advisory nature of the guidelines and took into account the sentencing factors found in

§ 3553(a). For example, the judge said at various points that "the court has some opportunity pursuant to *Booker* to change the guidelines, to ignore the guidelines, to set a sentence less," and "I will apply the guideline, which are advisory and I understand that," and "I think that the advisory guideline range, based upon the facts of this case, is not unreasonable based upon the Court's understanding." As he was entitled to do, the judge chose a sentence within the guidelines range because he deemed that sentence the most appropriate one for Serrano-Rangel.

Serrano-Rangel's next argument is that his sentence is unreasonable. He argues that the district judge focused only on the "punitive" aspects of the § 3553(a) factors and ignored his arguments that he was motivated by a need to pay for medical treatment and that his domestic-battery conviction overstated his criminal history. But the judge did address those arguments. He just rejected them, finding them outweighed by the seriousness of the crime, see § 3553(a)(2)(A), and the need for deterrence and the protection of the public, see § 3553(a)(2)(B)-(C).

Finally, Serrano-Rangel argues that court erred because it "touched on the need to avoid disparities in sentences," see § 3553(a)(6), even though Serrano-Rangel was the first member of the conspiracy to be sentenced. Serrano-Rangel misapprehends the purpose of § 3553(a)(6), which is to reduce unjustified sentencing disparities among judges and districts, not co-conspirators or co-defendants. See *United States v. Gooden*, 564 F.3d 887, 891 (7th Cir. 2009). The judge's decision to give Serrano-Rangel a guidelines sentence was consistent with that aim.

### III

The district court did not clearly err in denying Serrano-Rangel a minor-role adjustment. Furthermore, it fully understood the scope of its authority to choose a sentence, and the sentence it selected was reasonable sentence. We therefore **AFFIRM** the sentence.